07-CV-05422-CMP

Brian A. Knutsen
SMITH & LOWNEY, PLLC
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

Attorneys for Plaintiff

AUG 13 2007

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PUGET SOUNDKEEPER ALLIANCE, a non-profit corporation, ) ) | CV7 5422BHS |
| Plaintiff, ) ) | COMPLAINT |
| v. ) ) | |
| MILGARD TEMPERING, INC., ) ) | |
| Defendant. ) ) | |

## I. INTRODUCTION

1. This action is a citizen suit brought under Section 505 of the Clean Water Act ("CWA") as amended, 33 U.S.C. § 1365. Plaintiff, Puget Soundkeeper Alliance, seeks a declaratory judgment, injunctive relief, the imposition of civil penalties, and the award of costs, including attorneys' and expert witness fees, for Defendant, Milgard Tempering Inc.'s, repeated and ongoing violations of Sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342, and the terms and conditions of its National Pollutant Discharge Elimination System ("NPDES") permit authorizing discharges of pollutants from Defendant's facility to navigable waters.

COMPLAINT - 1

## II. JURISDICTION AND VENUE

2. The Court has subject matter jurisdiction under Section 505(a) of the CWA, 33 U.S.C. § 1365(a). The relief requested herein is authorized by 33 U.S.C. §§ 1319(d) and 1365(a).

3. Pursuant to Section 505 (b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), Plaintiff notified Defendant of Defendant's violations of the CWA and of Plaintiff's intent to sue under the CWA by letter dated and postmarked June 5, 2007 ("Notice Letter"). A copy of the Notice Letter is attached to this complaint as Exhibit 1. The allegations in the Notice Letter are incorporated herein by this reference. Plaintiff notified the Defendant's Registered Agent, the Administrator of the United States Environmental Protection Agency ("USEPA"), the Administrator of USEPA Region 10, and the Director of the Washington Department of Ecology ("WDOE") of its intent to sue Defendant by mailing copies of the Notice Letter to these officials on June 5, 2007.

4. More than sixty days have passed since the notice was served and the violations complained of in the Notice Letter are continuing or are reasonably likely to continue to occur. Defendant is in violation of its NPDES permit and the CWA. Neither the USEPA nor the WDOE has commenced any action constituting diligent prosecution to redress these violations.

5. The source of the violations complained of is located in Pierce County, Washington, within the Western District of Washington, and venue is therefore appropriate in the Western District of Washington pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1).

COMPLAINT - 2

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

## III. PARTIES

6. Plaintiff, Puget Soundkeeper Alliance, is suing on behalf of itself and its member(s). Puget Soundkeeper Alliance is a non-profit corporation organized under the laws of the State of Washington. Puget Soundkeeper Alliance is a membership organization and has at least one member who is injured by Defendant's violations. Puget Soundkeeper Alliance is dedicated to protecting and restoring natural resources, particularly the water resources of Puget Sound.

7. Plaintiff has representational standing to bring this action. The recreational, economic, aesthetic and/or health interests of Puget Soundkeeper Alliance and its member(s) have been, are being, and will be adversely affected by Defendant's violations of the CWA. The relief sought in this lawsuit can redress the injuries to these interests.

8. Plaintiff has organizational standing to bring this action. Plaintiff has been actively engaged in a variety of educational and advocacy efforts to improve water quality and to address sources of water quality degradation in the waters of Washington State. Defendant has failed to fulfill monitoring, recordkeeping, reporting, and planning requirements, among others, necessary for compliance with its NPDES permit and the CWA. As a result, Plaintiff is deprived of information necessary to properly serve its members by providing information and taking appropriate action, and Plaintiff's efforts to educate and advocate for greater environmental protection for the benefit of Plaintiff's members is thereby obstructed. Thus, Plaintiff's organizational interests have been adversely affected by Defendant's violations. These injuries are fairly traceable to Defendant's violations and redressable by the Court.

9. Defendant is a corporation authorized to conduct business under the laws of the State of Washington.

COMPLAINT - 3

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

10. Defendant owns and operates a glass processing facility located at or about 910 54th Avenue E, Fife, Washington 98424 (the "facility").

## IV.   FACTS

11. Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants by any person, unless in compliance with the provisions of the CWA.  Section 301(a) prohibits, inter alia, such discharges not authorized by, or in violation of, the terms of a NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

12. The State of Washington has established a federally approved state NPDES program administered by the WDOE. WASH. REV. CODE § 90.48.260; WASH. ADMIN. CODE ch. 173-220. This program was approved by the Administrator of the USEPA pursuant to 33 U.S.C. § 1342(b).

13. Pursuant to Section 402(a) of the CWA, 33 U.S.C. § 1342(a), the WDOE issued the Industrial Stormwater General Permit (the "General Permit") on August 21, 2002, effective September 20, 2002, and modified the General Permit on December 1, 2004, effective January 14, 2005. Section S3.A of the General Permit authorizes those that obtain coverage under the General Permit to discharge stormwater, a pollutant under the CWA, and other pollutants contained in the stormwater to the waters of the State subject to certain terms and conditions.

14. Pursuant to Condition S2 of the General Permit, Defendant filed with the WDOE an Application for General Permit to Discharge Stormwater Associated with Industrial Activity. WDOE granted Defendant coverage under the General Permit for Defendant's facility under Permit Number SO3-000074.

COMPLAINT - 4

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

15. The General Permit imposes certain terms and conditions on those covered thereby, including monitoring and sampling of discharges, reporting and recordkeeping requirements, as well as restrictions on the quality of stormwater discharges.

16. The facility discharges stormwater and other pollutants to the Fife Ditch.

17. The facility discharges pollutants to a water body that has been listed as an impaired water body under Section 303(d) of the CWA, 33 U.S.C. § 1313(d), for fecal coliform, total ammonia nitrogen and dissolved oxygen. In addition to the general monitoring requirements, Condition S4.G of the General Permit imposes an obligation on Defendant to monitor its stormwater discharges for these parameters.

18. Discharges from Defendant's facility contribute to the polluted conditions of the waters of the State, including but not limited to the Fife Ditch and connected waterbodies. Discharges from Defendant's facility contribute to the ecological impacts that result from the polluted state of these waters and to Plaintiff's and its members' injuries resulting therefrom.

19. The vicinity of the facility's discharges are used by the citizens of Washington and visitors, as well as at least one of Plaintiff's members, for recreational activities, including biking, fishing and nature watching. Plaintiff's member(s) also derive(s) aesthetic benefits from the receiving waters. Plaintiff's and its members' enjoyment of these activities and waters is diminished by the polluted state of the receiving waters and by Defendant's contributions to such polluted state.

20. Defendant has violated the General Permit and Sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342, by discharging pollutants not in compliance with a NPDES Permit. Defendant's violations of the General Permit and the CWA are set forth in the Notice Letter attached hereto as Exhibit 1 and are incorporated herein by this reference.

COMPLAINT - 5

21. Defendant has violated the General Permit and Sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342, by failing to comply with the monitoring, reporting, recordkeeping, and other requirements of the General Permit.

22. Defendant has violated the General Permit and Sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342, by failing to adequately control the quality of its stormwater discharges and by discharging pollutants that cause or contribute to violations of water quality standards of the State of Washington.

23. Defendant's violations of the CWA degrade the environment and the water quality of the receiving water bodies.

24. Defendant's violations were avoidable had Defendant been diligent in overseeing facility operations and maintenance.

25. Defendant has benefited economically as a consequence of its violations and its failure to implement improvements at the facility.

## V. CAUSE OF ACTION

26. The preceding paragraphs and the allegations in the Notice Letter are incorporated herein.

27. Defendant's violations of its NPDES permit described herein and in the Notice Letter constitute violations of sections 301 and 402 of the CWA, 33 U.S.C. §§ 1311 and 1342, and violations of "effluent standard(s) or limitation(s)" as that term is used in section 505 of the CWA, 33 U.S.C. § 1365.

28. On information and belief, the violations committed by Defendant are ongoing or are reasonably likely to continue to occur. Any and all additional violations of the General

COMPLAINT - 6

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

Permit and the CWA which occur after those described in Plaintiff's Notice Letter but before a final decision in this action should be considered continuing violations subject to this Complaint.

29. Without the imposition of appropriate civil penalties and the issuance of an injunction, Defendant is likely to continue to violate the General Permit and the CWA to the further injury of the Plaintiff, its member(s) and others.

30. A copy of this Complaint was served upon the Attorney General of the United States and the Administrator of the USEPA as required by 33 U.S.C. § 1365(c)(3).

## VI.   RELIEF REQUESTED

Wherefore, Plaintiff respectfully requests that this Court grant the following relief:

A. Issue a declaratory judgment that Defendant has violated and continues to be in violation of the General Permit and Sections 301 and 402 of the CWA, 33 U.S.C. §§ 1311 and 1342;

B. Enjoin Defendant from operating its facility in a manner that results in further violations of the General Permit or the CWA;

C. Order Defendant to immediately implement a Storm Water Pollution Prevention Plan that is in compliance with the General Permit;

D. Order Defendant to allow Plaintiff to participate in the development and implementation of Defendant's Storm Water Pollution Prevention Plan;

E. Order Defendant to provide Plaintiff, for a period beginning on the date of the Court's Order and running for one year after Defendant achieves compliance with all of the conditions of the General Permit, with copies of all reports and other documents which Defendant submits to the USEPA or to the WDOE regarding Defendant's coverage under the General Permit at the time it is submitted to these authorities;

COMPLAINT - 7

F.  Order Defendant to take specific actions to remediate the environmental harm caused by its violations;

G.  Order Defendant to pay civil penalties of $32,500.00 per day of violation for each violation committed by Defendant pursuant to Sections 309(d) and 505(a) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a), and 40 C.F.R. § 19;

H.  Award Plaintiff its litigation expenses, including reasonable attorneys' and expert witness fees, as authorized by Section 505(d) of the CWA, 33 U.S.C. § 1365(d); and

I.  Award such other relief as this Court deems appropriate.

RESPECTFULLY SUBMITTED this 10th day of August, 2007.

SMITH & LOWNEY, PLLC

By: _____
BRIAN A. KNUTSEN, WSBA #38806
Attorneys for Plaintiff

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883, FAX (206) 860-4187

June 5, 2007

**Via Certified Mail - Return Receipt Requested**
Managing Agent
Milgard Tempering, Inc.
P.O. Box 11368
Tacoma, Washington 98411

Re:   **NOTICE OF INTENT TO SUE UNDER THE CLEAN WATER ACT AND REQUEST FOR COPY OF STORMWATER POLLUTION PREVENTION PLAN**

Dear Managing Agent:

We represent Puget Soundkeeper Alliance, 5309 Shilshole Ave. NW, Suite 215, Seattle, WA 98107, (206) 297-7002. The mission of Puget Soundkeeper Alliance is to protect and preserve Puget Sound by tracking down and stopping the discharge of toxic pollutants into its waters. Any response or correspondence related to this matter should be directed to us at the letterhead address. This letter is to provide you with sixty days notice of Puget Soundkeeper Alliance's intent to file a citizen suit against Milgard Tempering, Inc. ("Milgard") under Section 505 of the Clean Water Act ("CWA"), 33 USC § 1365, for the violations described below. In addition, as described below, this letter is a request for a copy of the complete and current stormwater pollution prevention plan ("SWPPP") required by Milgard's National Pollution Discharge Elimination System permit.

Milgard has violated and continues to violate the CWA (see Sections 301 and 402 of the CWA, 33 USC §§ 1311 and 1342) and its National Pollutant Discharge Elimination System Permit No. SO3-000074 ("the Permit"), issued by the Washington Department of Ecology on August 21, 2002, effective on September 20, 2002, modified on January 14, 2005, and expiring on September 20, 2007, with respect to operations of, and discharges of stormwater and pollutants from, its facility located at or about 910 54th Avenue E., Fife, Washington 98424 (the "facility") as described herein.

I.   COMPLIANCE WITH STANDARDS

A.   Condition S3.E. of the Permit requires that Milgard's discharge not cause or contribute to an excursion of Washington State water quality standards and that Milgard must comply with the water quality standard for each pollutant named as a pollutant causing a violation of water quality standards at the location named on Washington's 303(d) list. Furthermore, Condition S7 of the Permit prohibits stormwater discharges that cause or contribute to violations of water quality standards in the receiving water. Pursuant to Condition S7.A of the Permit, the receiving water of Milgard's stormwater discharges is unnamed. At this location, the unnamed water body is water quality impaired (i.e., included on Washington's Section 303(d) list) for total ammonia nitrogen, dissolved oxygen and fecal coliform. Milgard has violated Conditions S3.E and S7 by discharging stormwater that causes or contributes to a violation of state water quality standards for turbidity, pH, zinc,

total ammonia nitrogen and dissolved oxygen each and every time that there is more than a trace amount of precipitation that causes a stormwater discharge from Milgard's facility. The dates on which these violations occurred include, but are not limited to, the dates on which stormwater samples were collected that exceeded benchmarks as indicated by Milgard's Discharge Monitoring Reports:

| Monitoring Period | Parameter | Value | |
|---|---|---|---|
| 3rd Quarter 2003 | pH | 4.32 S.U. | (North 8 Discharge Point) |
| 3rd Quarter 2003 | Zinc | 257 µg/L | (North 8 Discharge Point) |
| 3rd Quarter 2003 | pH | 5.36 S.U. | (North 1 Discharge Point) |
| 3rd Quarter 2003 | Zinc | 236 µg/L | (North 1 Discharge Point) |
| 4th Quarter 2003 | Turbidity | 59.1 NTU | |
| 4th Quarter 2003 | Zinc | 150 µg/L | |
| 1st Quarter 2004 | Zinc | 511 µg/L | (North 6 Discharge Point) |
| 1st Quarter 2004 | Turbidity | 66 NTU | (South 2 Discharge Point) |
| 1st Quarter 2004 | Zinc | 289 µg/L | (South 2 Discharge Point) |
| 3rd Quarter 2004 | pH | 3.91 S.U. | |
| 3rd Quarter 2004 | Zinc | 358 µg/L | |
| 4th Quarter 2004 | pH | 5.95 S.U. | |
| 4th Quarter 2004 | Zinc | 39,400 µg/L | |
| 1st Quarter 2005 | Zinc | 226 µg/L | |
| 2nd Quarter 2005 | pH | 5.95 S.U. | |
| 2nd Quarter 2005 | Zinc | 21,200 µg/L | |
| 3rd Quarter 2005 | Turbidity | 37.6 NTU | |
| 3rd Quarter 2005 | Zinc | 264 µg/L | |
| 3rd Quarter 2005 | Dissolved Oxygen | 5.69 mg/L | |

B.      Condition S3.A of the Permit requires all discharges and activities authorized by the Permit to be consistent with the terms and conditions of the Permit. Milgard has violated this condition by discharging and acting inconsistent with the conditions of the Permit as described in this Notice of Intent to Sue.

II.     STORMWATER POLLUTION PREVENTION PLAN

A.      Condition S9 of the Permit requires Milgard to prepare and fully implement a SWPPP as specified. The SWPPP must include the best management practices ("BMPs") necessary to provide all known, available and reasonable methods of prevention, control, and treatment. It must also include any additional BMPs as necessary to comply with state water quality standards. Milgard is in violation of this condition as it has failed to prepare and/or implement a SWPPP that includes BMPs necessary to comply with state water quality standards.

B.      Condition S9 of the Permit requires Milgard to have and implement a SWPPP that "must be consistent with permit requirements, fully implemented as directed by permit conditions, and updated as necessary to maintain compliance with permit conditions." In sum, Milgard is in violation of this condition because its SWPPP is not consistent with permit requirements, has not been fully implemented and has not been updated as necessary.

The SWPPP fails to satisfy the requirements of Condition S9 of the Permit because it does not adequately describe best management practices ("BMPs"). Condition S9.B.3 of the

Permit requires that the SWPPP "include a description of the [BMPs] that are necessary for the facility to eliminate or reduce the potential to contaminate stormwater. The SWPPP must document how stormwater BMPs were selected, the pollutant removal performance expected from the BMP being selected and the technical basis that supports the performance claims for the BMPs being selected and an assessment of how the selected BMP will comply with state water quality standards, satisfy the state AKART requirements, and the federal technology-based treatment requirements under 40 CFR part 125.3." As described by this subcondition and the second and third prefatory paragraphs of Condition S9 of the Permit, in lieu of such documentation ("the demonstration approach"), a permittee can choose to follow the stormwater management practices contained in approved stormwater technical manuals ("the presumptive approach"). Condition S9.A.5 of the Permit directs permittees selecting the presumptive approach to "clearly state which of the approved stormwater technical manuals the BMPs in their SWPPP are based on." Milgard's SWPPP does not adequately describe BMPs and does not provide documentation of BMP adequacy (or citation to an approved stormwater technical manual).

Milgard's SWPPP fails to satisfy the requirements of Condition S9.A of the Permit. The SWPPP fails to include measures to identify and eliminate the discharge of illicit discharges as required by Condition S9.A.1 of the Permit. The SWPPP fails to provide a schedule for implementation of additional or enhanced BMPs necessary because of a notice from Ecology, facility changes or self-inspection that satisfies the timeline requirements of Condition S9.A.4 of the Permit. Milgard has failed to modify the SWPPP in response to changes and deficiencies as required by Condition S9.A.4 of the Permit.

Milgard's SWPPP fails to satisfy the requirements of Condition S9.B.1 of the Permit because it fails to include a facility assessment as mandated. The SWPPP fails to include an adequate facility description because it does not describe the industrial activities conducted at the site, the general layout of the facility including buildings and storage of raw materials, the flow of goods and materials through the facility and seasonal variations including peaks in production and changes in work based on season or weather as Condition S9.B.1.a of the Permit requires. The SWPPP fails to include an adequate site map because it has no site map that provides identifiers of significant features and that is of sufficient size and detail to identify the stormwater drainage and discharge structures, an outline of the stormwater drainage areas for each stormwater discharge point, paved areas and buildings, areas of pollutant contact, surface water locations, areas of existing and potential soil erosion and vehicle service areas as Condition S9.B.1.b of the Permit requires. The SWPPP fails to include an adequate inventory of industrial activities because it does not identify all areas associated with industrial activities which have been or may potentially be sources of significant amounts of pollutants, including the following: loading/unloading of dry bulk materials or liquids; outdoor storage of materials or products; outdoor manufacturing and processing; dust or particulate generating processes; roofs or other surfaces exposed to air emissions from a manufacturing building or a process area; on-site waste treatment, storage or disposal; vehicle and equipment fueling, maintenance and/or cleaning; and roofs or other surfaces composed of materials that may be mobilized by stormwater, as required by Condition S9.B.1.c of the Permit. The SWPPP fails to include an adequate inventory of materials because it does not list all the types of materials handled at the site that potentially may be exposed to precipitation or runoff and that could result in stormwater pollution of a significant amount as required by Condition S9.B.1.d of the Permit. The SWPPP lacks an inventory of materials that includes a short narrative for each of these materials describing the potential for the pollutant to be present in stormwater discharge, and updating of this

inventory as data has become available to verify the presence or absence of these pollutants as required by Condition S9.B.1.d of the Permit has not occurred. The SWPPP does not include a narrative description of any potential sources of pollutants of a significant amount from past activities; significant materials that were previously handled, treated, stored, or disposed of in a manner that allows ongoing exposure to stormwater as required by Condition S9.B.1.d of the Permit. The SWPPP does not include the method and location of on-site storage or disposal of such materials and a list of significant spills and significant leaks of toxic or hazardous pollutants as Condition S9.B.1.d of the Permit requires.

Milgard's SWPPP fails to satisfy the requirements of Condition S9.B.2 of the Permit because it fails to include a monitoring plan that addresses stormwater sampling requirements and visual inspections as mandated. The SWPPP has no monitoring plan that identifies all the points of discharge and a discussion of representative sampling and how Milgard has determined which points of discharge to monitor as Condition S9.B.2 of the Permit requires. This representative discussion is to include a means to estimate the volume/rate of discharge from each discharge point, differences in exposure to pollutants at each discharge point, pollutants likely to be in each discharge and a relative comparison of probable pollutant concentrations, none of which is included in the SWPPP. The SWPPP fails to identify who is responsible for monitoring and how monitoring will be conduced as Condition S9.B.2 of the Permit requires. In violation of Condition S9.B.2 of the Permit, the SWPPP lacks a monitoring plan that includes: identification of points of discharge; a check list for visual monitoring; identification of who conducts stormwater sampling; identification of where samples will be taken; parameters for analysis; procedures for sample collection and handling; procedures for sending samples to a lab; and procedures for submitting results to Ecology.

Milgard's SWPPP fails to satisfy the requirements of Condition S9.B.3.a of the Permit because it does not include operational source control BMPs. Specifically, the SWPPP lacks the following categories of BMPs as Condition S9.B.3.a of the Permit requires: pollution prevention team (including identification of specific individuals by name or title who are responsible for developing, implementing, maintaining, and modifying the SWPPP, and for all aspects of the SWPPP); good housekeeping (including definition of ongoing maintenance and cleanup of areas that may contribute pollutants to stormwater discharges, and a schedule/frequency for each housekeeping task); preventive maintenance (including BMPs to inspect and maintain stormwater control-related equipment and systems, and the schedule/frequency for each task); spill prevention and emergency cleanup plan (including BMPs to identify areas where potential spills could contaminate stormwater and specifications of material handling procedures, storage requirements, and cleanup equipment and procedures); employee training (including operation of the SWPPP, spill response procedures, good housekeeping, and material management practices, the content of the training, how training will be conducted, the frequency/schedule to ensure that employees receive training, and a log of the dates on which specific employees received training); inspections and recordkeeping (including documentation of procedures to assure compliance with permit requirements for inspections and recordkeeping, including identification of personnel who conduct inspections, provision of a tracking or follow-up procedure to ensure that a report is prepared and appropriate action taken in response to visual monitoring, definition of how Milgard will comply with signature and record retention requirements, and certification of compliance with the SWPPP).

Milgard's SWPPP fails to comply with Condition S9.B.3.b of the Permit because it does not identify structural source control BMPs necessary for stormwater management.

Milgard's SWPPP fails to comply with Condition S9.B.3.c of the Permit because it does not include appropriate treatment BMPs, and because it includes no narrative that describes how MILGARD determined that treatment BMPs are or are not required.

Milgard's SWPPP fails to comply with Condition S9.B.3.d of the Permit because it does not include stormwater peak runoff rate and volume control BMPs and a narrative that describes how Milgard determined whether flow control BMPs are or are not required.

Milgard's SWPPP fails to comply with Condition S9.B.4 of the Permit because it does not include a narrative that describes whether there is a reasonable potential for soil erosion of a significant amount at the site and BMPs to prevent or minimize the potential for soil erosion.

### III.  MONITORING, REPORTING, AND BENCHMARK-RELATED REQUIREMENTS

A.  Condition S4.A of the Permit requires Milgard to collect a sample of its stormwater discharge once during every calendar quarter. This condition sets forth sample collection criteria, but requires the collection of a sample even if the criteria cannot be met. Milgard violated this condition by failing to collect the required sample for the second quarter of 2003, the second quarter of 2004, the fourth quarter of 2005, and the second, third and fourth quarters of 2006.

B.  Condition S4.D.2 of the Permit requires Milgard to analyze samples collected quarterly for turbidity, pH, total zinc, and oil and grease beginning with the second quarter of 2003. Condition S4.D.3 of the Permit requires Milgard to analyze samples collected quarterly for copper, lead and hardness if Milgard has exceeded the 117 µg/L benchmark for zinc for two consecutive quarters beginning with the next quarter. Samples collected in the third and fourth quarters of 2003 by Milgard exceeded this benchmark for zinc, and Milgard was therefore required to analyze samples for these parameters beginning with the first quarter of 2004. Also, Condition S4.G of the Permit requires Milgard to analyze samples collected quarterly for total ammonia nitrogen, dissolved oxygen and fecal coliform beginning with the first quarter of 2005.

Milgard violated these conditions by failing to analyze stormwater samples for any of the required parameters for the second quarter of 2003, the second quarter of 2004, the fourth quarter of 2005, and the second, third and fourth quarters of 2006, and by failing to analyze stormwater samples for copper, lead and hardness for the first, third and fourth quarters of 2004, the first, second and third quarters of 2005, and the first quarter of 2006.

C.  Condition S5.A of the Permit requires Milgard to use Discharge Monitoring Report ("DMR") forms provided or approved by the Department of Ecology to summarize, report and submit monitoring data to the Department of Ecology. For each monitoring period (calendar quarter) a DMR must be completed and submitted to the Department of Ecology not later than 45 days after the end of the monitoring period. Milgard has violated this condition by not submitting a DMR on time or at all for the second, third and fourth quarters of 2003, the first and second quarters of 2004, the fourth quarter of 2005, and the second, third and fourth quarters of 2006.

D.      Condition S5.A of the Permit requires Milgard to use DMR forms provided or approved by the Department of Ecology to summarize, report, and submit monitoring data to the Department of Ecology. The DMRs provided by the Department of Ecology to Milgard require Milgard to report stormwater sampling results for zinc in micrograms per liter (µg/L). Milgard is in violation of Condition S5.A of the Permit by failing to report stormwater sampling results for zinc in micrograms per liter for the third and fourth quarters of 2003, the fourth quarter of 2004, and the first and second quarters of 2005.

E.      Condition S4.C of the Permit requires Milgard to take specified actions, called a "Level One Response," "each time after December 31, 2004 quarterly sample results are above a benchmark value or outside the benchmark range for pH." A Level One Response comprises: a facility inspection as promptly as possible but no later than two weeks after receipt of sampling results, with the inspection evaluating possible sources of the benchmark parameter in the discharge, identifying source/operational control methods by which stormwater contamination can be further reduced, and evaluating whether any improvements or changes to the stormwater pollution prevention plan are warranted to control the benchmark parameter; summarization of the inspection results, including remedial actions taken, if any, in the stormwater pollution prevention plan; evaluating the need for a level two or three response as the Permit describes; and including a brief summary of inspection results and remedial actions with the quarterly discharge monitoring report for the quarter for which the sample results were above (or outside) benchmark values. Condition S5.A also requires summaries of Level One Responses to be included on quarterly discharge monitoring reports.

Condition S4.D.2 establishes the following benchmarks: turbidity 25 Nephalometric Turbidity Units ("NTU"); pH 6 – 9 standard units ("SU"); zinc 117 µg/L; and oil and grease 15 mg/L. The following benchmarks have been established for Milgard's discharges pursuant to Condition S4.G: total ammonia nitrogen 21.8 mg/L; dissolved oxygen 6.5 mg/L (minimum); and fecal coliform 200 #/100 mL.

Milgard has violated the requirements of Condition S4.C and S5.A by failing to conduct a Level One Response, including the required inspection, summarization, and reporting, for each of the following exceedances of benchmark values:

| Monitoring Period | Pollutant | Discharge Quality |
| --- | --- | --- |
| 1st Quarter 2005 | Zinc | 226 µg/L |
| 2nd Quarter 2005 | pH | 5.95 S.U. |
| 2nd Quarter 2005 | Zinc | 21,200 µg/L |
| 3rd Quarter 2005 | Turbidity | 37.6 NTU |
| 3rd Quarter 2005 | Zinc | 264 µg/L |
| 3rd Quarter 2005 | Dissolved Oxygen | 5.69 mg/L |

F.      Condition S4.D.1 of the Permit requires Milgard to perform quarterly visual monitoring during stormwater sampling. This visual monitoring must include observations made at sampling locations at the time of sampling; an inspection of stormwater discharges for the presence of floating materials, visible sheen, discoloration, turbidity, and odor; and an assessment of the best management practices required by the permit and the SWPPP. Discharge locations that are not sampled must be visually inspected at least annually during a storm event. The visual monitoring and inspections must be conducted by the personnel

specified by the SWPPP, who must verify that the description of potential pollutant sources is accurate, that the site map required in the SWPPP has been updated or modified to reflect current conditions, and that the controls to reduce pollutants in stormwater discharges are implemented and adequate.

In addition to quarterly visual inspection during storm events, Milgard must conduct at least one dry season (July, August, September) inspection each year and that inspection must be performed by the personnel specified in the SWPPP and must occur after at least seven consecutive days of no precipitation. The dry season inspection must determine the presence of non-stormwater discharges, which must be eliminated within thirty days unless authorized by the Permit. Milgard must also notify the Department of Ecology if non-stormwater discharges are discovered.

The results of each inspection/visual monitoring event must be summarized in an inspection report or checklist and entered into or attached to the SWPPP, and must be signed by the person making the observations. Visual monitoring reports must also be reviewed and signed by a duly authorized representative of Milgard. Monitoring reports must include a certification of whether, in the judgment of the person signing the report, Milgard is in compliance or non-compliance with the SWPPP and the Permit, and identify any incidents of non-compliance. If the site inspection indicates that the requirements of the SWPPP or the Permit are not being met, the visual inspection report must include a summary of the actions that will be taken to meet these requirements.

Milgard is in violation of these requirements of Condition S4.D.1 of the Permit because it has failed to conduct the requisite quarterly and other visual monitoring, failed to conduct an annual dry season inspection, failed to prepare the requisite inspection reports or checklists and enter them into or attach them to the SWPPP, and failed to make the requisite certifications and summaries for any period since required to do so under the Permit.

G.      Condition G17 of the Permit requires that all applications, reports, or information submitted by Milgard to the Department of Ecology be signed and certified by a person of specified authority (in the case of a corporation, by a principal executive officer of at least the level of vice president) or by a person who is duly authorized by such person as specified. Milgard is in violation of this condition because the Receiving Water Information and Declaration of Mixing Zone Form dated December 27, 2002 and the DMRs that it has submitted are not signed and certified by such person.

## IV.    RECORDKEEPING REQUIREMENTS

A.      Condition S5.C of the Permit requires Milgard to record specified information for each sample taken, including the date, exact place, method, and time of sampling or measurement; the individual who performed the sampling or measurement; the dates the analyses were performed; the individual who performed the analyses; the analytical techniques or methods used, and the results of all analyses. Milgard is in violation of this condition as it has not recorded each of these specified items for samples taken since required to do so under the Permit.

B.      Condition S5.B of the Permit requires Milgard to retain records of all monitoring information, inspection reports, and any other documentation of compliance with permit

requirements for a minimum of five years. Milgard is in violation of this condition because it has failed to retain records of such information, reports, and other documentation.

C. Condition S5.E of the Permit requires Milgard to take specified actions if Milgard fails for any reason to comply with any condition specified by the Permit. The specified actions include: immediate action to minimize potential contamination or otherwise stop the noncompliance and correct the problem; immediate notification to the Department of Ecology of the failure to comply; and submission to the Department of Ecology of a detailed written report within thirty days. The detailed written report must describe the noncompliance, including exact dates and times, and, if the noncompliance has not been corrected, the anticipated time it is expected to continue, and the steps taken or planned to reduce, eliminate, and prevent reoccurrence of the noncompliance. Milgard has violated this condition by failing to take the required actions, including submission of a detailed written report, for any of the violations described in this Notice of Intent to Sue.

## V. PUBLIC ACCESS TO STORMWATER POLLUTION PREVENTION PLAN

Pursuant to Condition S5.F of the Permit, <u>Puget Soundkeeper Alliance hereby requests that Milgard provide a copy of its Stormwater Pollution Prevention Plan</u>, complete with the inspection/visual monitoring reports or checklists (S4.D., S9.B.3.a.vi), monitoring plan (S9.B.2), employee training logs (S9.B.3.a.v), other plans incorporated by reference (S9.A.6) and all other components as specified by Condition S9 of the Permit. Puget Soundkeeper Alliance requests that Milgard provide such copy within fourteen days of its receipt of this request, which constitutes a reasonable time under Condition S5.F of the Permit. *See, e.g.,* Permit, Condition S9.A.2 (requiring submission of the SWPPP to the Department of Ecology within two weeks of request receipt). The copy of the SWPPP and any other communications about this request should be directed to the undersigned at the letterhead address.

Should Milgard fail to provide the requested complete copy of its SWPPP within a reasonable time as required by Condition S5.F of the Permit, it will be in violation of that condition, which violation shall also be subject to this Notice of Intent to Sue and any ensuing lawsuit.

The above-described violations reflect those indicated by the information currently available to Puget Soundkeeper Alliance. These violations are ongoing. Puget Soundkeeper Alliance intends to sue for all violations, including those yet to be uncovered and those committed after the date of this Notice of Intent to Sue.

Under Section 309(d) of the CWA, 33 USC § 1319(d), each of the above-described violations subjects the violator to a penalty of up to $32,500 per day. In addition to civil penalties, Puget Soundkeeper Alliance will seek injunctive relief to prevent further violations under Sections 505(a) and (d) of the CWA, 33 USC § 1365(a) and (d), and such other relief as is permitted by law. Also, Section 505(d) of the CWA, 33 USC § 1365(d), permits prevailing parties to recover costs, including attorney's fees.

Puget Soundkeeper Alliance believes that this NOTICE OF INTENT TO SUE sufficiently states grounds for filing suit. We intend, at the close of the 60-day notice period, or shortly thereafter, to file a citizen suit against Milgard Tempering, Inc. under Section 505(a) of the Clean Water Act for violations.

During the 60-day notice period, we would be willing to discuss effective remedies for the violations addressed in this letter and settlement terms. If you wish to pursue such discussions in the absence of litigation, we suggest that you initiate those discussions within 10 days of receiving this notice so that a meeting can be arranged and so that negotiations may be completed before the end of the 60-day notice period. We do not intend to delay the filing of a complaint if discussions are continuing when the notice period ends.

Very truly yours,

SMITH & LOWNEY, PLLC

By: _____

Richard A. Smith

c:  Steve Johnson, Administrator, U.S. EPA
Elin Miller, Administrator, Region 10 U.S. EPA
Jay Manning, Director, Washington Department of Ecology
Gary Milgard, Registered Agent (1010 54th Ave. E., Tacoma, WA 98424)